May it please the court. Good morning. Good morning judges and Mr. O'Connick. I'd like to thank you for the opportunity of being here to argue this matter. I represent appellant Lonnie Dale Spotted Bear on appeal. He was convicted of aggravated sexual abuse of a child under 12, attempted aggravated sexual abuse of a child under 12, and abuse of sexual conduct contact with a child under 12. These were all children who were younger than 12 as indicated by the charges. All of these children were born in probably 2003 or 2004 and at trial were 12 and 13 testifying against him. All of these relatives of Mr. Spotted Bear that were the victim witnesses were also related to him in some regard. So we have three victim witnesses. The first one is S.H. She testified at trial that my client had made contact with her sexually while they were looking for an iPad. N.H.E., the second victim witness where two counts are, it was made allegation wise by her that she had been molested while sleeping in his living room and also that he tried to attack her in a third victim abuse of sexual contact under 12 with a child under 12. She alleged that he had touched her inappropriately while she was younger. These alleged victim witness victims all testified in a manner that was consistent by their child advocacy center forensic interviews. The three children had interviewed after these allegations were made with forensic interviewers. There are two separate ones, two for one forensic interviewer and one for the other. Mr. Spotted Bear's trial strategy essentially is what the government says it was. One, that these children were coached. Two, that they conspired with one another to come up with these charges. And three, that there were new allegations that came on after the child advocacy center interviews. All of the children testified consistent with their CAC interviews. In order to qualify for the admission of prior consistent statements under Rule 801, you have to show that if it's substantive evidence, that it's to rebut recent fabrication allegations. However, Mr. Spotted Bear testified and also theorized during the case that these allegations were made well before they interviewed with the D1BI. With regard to the allegations being admissible under the second part of 801 D1BI2, these children would not have had their interview testimony, should not have had their interview testimony submitted so as to bolster their credibility. Looking at the trial testimony, these children were not impeached by any inconsistent statements between their trial testimony and their CAC interview testimony. I'm having trouble with the NHE video interview in particular because it appears that Mr. Spotted Bear wanted portions of it played. Yes. And I wonder whether or not that's just invited air. He never objected. He seemed to be fine with it because there's this theory, as you mentioned earlier, about the victims getting together and conspiring. And so it seems like the district court was doing what Mr. Spotted Bear wanted with respect to that one. Right. With respect to that one. I was not trial counsel, so I can't speak for what was going on in his mind. With regard to playing the entirety of NHE's video, that would follow the rule of completeness. I thought he said, you know, hey, this is going to be played, so we may as well play it all. You know, he did not object. And this is a plain error standard of review, which, you know, is difficult but not fatal. Is it plain error here or is it invited error? I mean, where a defendant says, hey, yes, let's do this. I'm not even sure we're in plain error land because the defendant or defendant's counsel is actually essentially asked for the air. And I understand that that's one way to interpret this. I would still argue that it's a plain error. You know, there are two ways that two two issues, either it's a waiver or a forfeiture. And based on the record in this case, I believe that it's a forfeiture and not a waiver because I don't know that the rights were known as to what was being waived at the time that it was at the time that the forfeiture was made as to errors or as to rights that were being waived, if that makes sense. So I'd like to address Mr. O'Connick's, the government's brief. He argues that this should have been or would have been admitted under the rule 807, the residual hearsay rule. I don't know that that would be the case. We have this old Thunder Horse case, which may be sort of, well, we have it and it's a plain error case. So what do you say about how it's obviously wrong? I think that the facts in Thunder Horse are different enough here in this case that it's not applicable. In Thunder Horse, it's got to be different. Tell us how it's obviously different. Well, it's obviously different in that the prior inconsistent statements were entered, not prior consistent statements. The interview of the forensic interviewer was 17 days after the alleged assault, not five to eight years after the alleged assault. And it was the testimony of the interviewer, not the actual video that was entered. The problem with entering these videos is that in Spotted Bear, not only were the allegations consistent with what they testified to at trial, they were repeated over and over and over again by the forensic interviewer. They just kept mowing over the same issues repeatedly. And that has to affect a jury. They hear it once on direct testimony, and then they hear it again when it's played in that interview. And it plays five, six times. I mean, this gets into a case where in Bercier, you know, it made the difference. They said that it wasn't merely cumulative, but that based on a he said, she said, with no forensic interviews and no witnesses or no physical evidence, that it was that extra helping that was contemplated in Ramos Caraballo. Where, you know, in a case where there is evidence of overwhelming guilt, maybe it doesn't matter. But in a case like Bercier, it does matter. And I would submit that in this case, the sex abuse charges were years old. They were made by children who were remembering back to when they were four or five or six years old, when they're 12, 11 and 12. That I just think that it's just not. It's it's prejudicial, it's extremely prejudicial when these are repeated over and over and over. You know, I want to focus in on the prejudice point to your your client carried because it's plain air carries the burden of proof to show that a substantial rights were affected under S.H. and M.S.'s interviews. And there we have this case, you know, that says if there's other even if it's hearsay evidence, so other people testifying to what the victim said and you did here have, you know, family members and others talking about the exact same things that appeared on the video are very similar. What do we do with that? It seems to me that that then the videos, when you when you add in that the victims themselves testified that there was other hearsay evidence that wasn't objected and not being challenged, that we have a lot. I mean, it's hard to prove substantial rights. Am I wrong about that? That is very true as far as being able to prove substantial rights. But in this case, you know, the family testified as to prior inconsistent statements. The prior consistent statements are the issue here. You know, like I said, four or five, six times the jury is hearing the same issue. The family testified to clarify some issues, the clarification, contextualization, which is what you have. And I believe USV Cotton, that is admissible in that in that sort of situation. But I just think that, you know, with regard to the residual hearsay exception, the standard is not met. I believe that it's unfairly prejudicial. I don't think it survives Rule 403. I don't think that this can just be kind of an extra helping. I mean, it is cumulative. So under that, it shouldn't necessarily be be testified to. Yeah, I understand you were talking about the residual hearsay. I was getting more and maybe the answer is the same, more to the plain air standard and the third prong of substantial rights. Does your does your answer change in any way with regard to that? Or would you give me the same answer that you gave? It would be some of the same answer. I mean, you know, it seriously affects the fairness of the trial when you have victims testify times five versus saying it once and then having it again. I think that substantially affects the outcome of the trial, you know. And the other issue that we have here is, I think it's similar to the Bercier, if I'm pronouncing that right. The Bercier opinion, where that did, was the response or the outcome later where Ramos Caraballo was contested and they said, this is such a case. This is such a case where they had the alleged victim testify. They had the defendant testify, and then her statements came in through an interviewer. And again, back to the Thunder Horse thing, the testament was through an interviewer, not the child being repeated. I think that in Bercier, because they said the interviewer, the doctor repeating the testimony was just, it was too much. That was a substantial affect of his rights. I see that I only have four minutes left, and I would like to reserve some time. Hearing no other questions? Okay, thank you. All right, Mr. O'Connick, we'll hear from you. May it please the court, opposing counsel. Good morning again, my name is Jonathan O'Connick with the US Attorney's Office in Bismarck, North Dakota. I represent the United States, and we ask that you affirm all four counts on which the jury found Mr. Spotted Bear guilty. The ultimate question for this court is, can it be plain error if the defendant wanted the evidence admitted? And under United States versus Evenson, this court last year held, plain error relief is not available in cases of waiver because waiving an issue extinguishes any potential error and leaves nothing to correct. And what I'd like to point out to the court is that this was a decision that the United States introduced the evidence not as a prior consistent statement. It was to rebut certain allegations that the defendant made, specifically that these three young girls had concocted these allegations together. And it was in part largely due to the fact that the appellant wanted this evidence admitted at trial. Prior to trial, the United States Defense Council and the court held a hearing outside the presence of the jury, wherein the United States made it clear that it had filed previous notices of intent to offer the forensic interviews under federal rule of evidence 807. However, we were not going to admit those recordings absent three circumstances, as is kind of stated in Thunder Horse and some of the other progeny. Whether the girl stated they didn't remember, they were non-responsive, something was different, or if the defendant opened the door. And United States versus Smith is a case that I'd like to highlight because it was very similar, where this court held the district court did not err when pursuant to federal rule 807 in Thunder Horse. It admitted a video recorded child forensic interview, specifically because throughout trial, the defendant placed the issue of the victim's credibility in controversy, which allowed the government to admit germane evidence to explain, contradict, or rebut. And I'd like to highlight Judge Strauss' point about the NHE interview. Now, that certainly is invited error. The appellant not only did not object, in plain error is a highly deferential review. However, in this case, it was invited because not only did he not object, he specifically wanted portions, and even though the United States had redacted certain portions of the interview, because they referenced another victim that was alleged to have potentially been abused. Just because he failed to object to the other portions, and wanted specific portions played, does that necessarily mean he invited the error as to the portions introduced by the government? Absolutely. I believe under United States versus Smith, that is something where, and I think it's... There was another case that involved the same Westcott v. Crinklaw, where it talks about how when two parties get together about what they're going to do before trial, in this case, the United States talks with the defendant about, hey, I don't really intend to offer these interviews unless you bring it up and make it into an issue. And then he does. I believe it allows everything to come in, because not only did he want to include other portions, he, before we, the United States, even ask the victim or even bring it up in opening statement, he's telling the victim, he goes, you went to a forensic interview. This has been recorded. We could show the jury all of this. At that point, he's then arguing, you concocted this allegation with these other girls, therefore, there's something in this video that probably is beneficial for us. At that point, it allows us to bring in that interview to explain and rebut the fact that she was not concocting the allegations. And I think specifically under 807, this is a case where 807 applies via ______. But the charge that she was concocting the allegations, that would be an 801-type argument. There is potential. It's a wrong order for 801. There is potential that under a prior consistent statement, when the appellant called one of the friends in to testify about how she had said something different, that the prior interview actually would precede that motive to fabricate. But in this specific instance, the way it rebuts is because it shows the full picture. It rehabilitates. It explains the entire avenue of how this allegation came forward. The individual who wants this item in wants it for a certain piece. They don't object, so it's plain error. And then they go so far as to say, we want a specific portion included because we're saying that everything is a big conspiracy. This interview, there were certain portions in the interview where the victim describes certain things, talking about how she does not necessarily want to talk about certain things. It shows a difference in demeanor, that although the defendant is making the argument, she's trying to concoct this story with another person, her demeanor in the interview is absolutely different. It's showing that there are certain things she doesn't want to talk about. There are certain things she's embarrassed about, which rebuts the idea that this was some sort of concoction. Now, in terms of Federal Rule of 807, we would argue that even assuming that it's not invited error, that it's still plain error, and it's plain error. There was no deviation from the rules specifically that would show that it was plain because it was admissible under Federal Rule of 807 under U.S. v. Thunderhorse, which shows that if there is a statement that is more probative on the point than any other evidence, that the general purpose of the rules and interest of justice can be served, and it's evidence of a material fact, coupled with circumstantial guarantees of trustworthiness, which is what Thunderhorse talks about, it's admissible. And the circumstantial guarantees of trustworthiness in Thunderhorse go to the forensic interviews themselves, whether or not they're trained forensic interviewers, they ask non-leading questions, whether or not they speak consistently about the events in the interview as they do at other times, and how quickly or how the length of time between each of the interview and the outcry. And I think most importantly is that United States v. Smith case again, which goes into show that if the defendant makes it a strategy to attack the victim's credibility, then the forensic interviews can come in to rebut, to clarify those issues. And the issues in this case are that the forensic interviews were closer in time to the outcry. They showed a different demeanor for each of the girls than the defendant wanted to portray. These were people who were vindictive trying to get him. I think there was some argument even about potential money that he might have. You saw three scared girls who really didn't want to talk about what had happened, and demonstrating to the court that this was not something where we have a grand conspiracy. And in terms of the last point I'd like to bring out is that the prejudice angle, there is no prejudice for the admission of these interviews because Mr. Spotted Bear himself testified at trial. And when he testified, he corroborated almost everything the girls stated with the exception of the sex act. For NHE, he specifically talked about how she slept in his living room. When he would drive, he would place her on his lap. The incident in the barn, he talked about how there was a time where she tried to get away, and he grabbed her arm and pulled her back. He remembered her pulling out her smartphone, calling her grandfather. And then for SH, he remembered the incident about getting the iPad. He remembered the incident with MS, where she was there for Thanksgiving, that he went upstairs with her, that he wrestled around with her and her cousin. And all of that demonstrates that this is not an extra helping like in Bercier or some of the other prior consistent statement cases, which would in some way say, hey, you've heard it more than one time, therefore this is prejudice. The defendant's own testimony corroborated so much of the victim's own testimony that it's not prejudicial to have the forensic interviews in. And ultimately, this case is not where, even if it was, there was error, there was some deviation from a legal rule, whether there was in fact prejudice, because ultimately the appellant had the chance to object to all of these interviews. The United States made it abundantly clear that it was only going to introduce these videos should the defendant open the door or something come up. And the United States reluctantly introduced these interviews after the defendant made it a general part of his trial strategy to say, all of these girls are colluding, they are talking with people to tell them what to say at the forensic interviews. The United States then says, all right, now that they've made it a point for the jury to consider, we have to admit this evidence to clarify to the jury what actually happened in these interviews. Because if there's an unanswered question for the jury, they may think that something happened that didn't. And that is what the United States did not want to leave the jury with. What about the third requirement of the plein air standard? And you heard me talk to opposing counsel. You have a lot of hearsay. It doesn't appear that much hearsay was excluded. Maybe I'm misreading the trial record here, but there's a lot of hearsay that came in. But a lot of it's not being challenged, and a lot of it's not before us. So what do we do on the substantial rights? I believe you referenced the Pinot decision where you're absolutely right. The other hearsay statements that came in from the guardians of the children, all that supports that there was no, that they didn't affect Mr. Spotted Bear's substantial rights. And I would also argue that also at trial, when the appellant testified and he brought his family members to testify, they equally brought out additional hearsay statements that would also go into that vein. And pending your questions, Your Honor, I would ask this court to affirm on all four counts that the jury found the appellant guilty. Well, all of that came in. I'm trying to figure out why. Were the attorneys, was there strategic reasons for not objecting to the hearsay? Because a lot of this is under plein air. It's just a little astonishing to me that this much hearsay ended up coming in. Your Honor, I think that that goes to the point of the United States argument, which is the defense at this trial was all of these girls got together, colluded, that they made up allegations after the fact and they were going after Mr. Spotted Bear and potentially for various reasons. And I think the reason to not object to this evidence is to further that defense. And to further that defense, although it may not be a defense that it did not work in this case, it doesn't mean it was necessarily a bad defense because when three girls say that you've molested them, you have to come up with a defense. And the defense was they were conspiring. And all of those hearsay statements, everything, including the forensic interviews, furthered the defense's argument. And although it may not have been... How did the forensic interviews further the argument? In one of the forensic interviews... It was the one piece of one. Right. And there's a couple of pieces, I think, in the NHE's interview, and there might even be an SH's interview, where they're talking about how... I believe at least... I know it's at least in NHE where they talk about the Boys and Girls Club, where they've gotten together. I think it's SH says, Lonnie licked my vagina, and then NHE said it happened to me as well. And then that furthered their argument for when the... Could it be elicited on cross-examination? It absolutely could have been. Why do you think it was such a great idea to let the three videos end there? I can't speak to why the defendant did not object at the time. My argument is that it was for the benefit of him to make the greater argument of a grand conspiracy. Ultimately, we... I know. I just didn't understand how the videos helped that theory. You're saying it's because one piece of one of the three videos had that one reference to the girls together? Yes, Your Honor. There's also portions where they keep talking about other individuals. There's the idea that the United States needed to get more evidence. So there's times in the forensic interviews where they bring up individuals' names to go look for. There's a part where when we redacted some of the forensic interview for additional people that might have been victims, there was talk where the defendant wanted those in to explain that the United States didn't chase down every lead, those sorts of things, and that this idea that these allegations keep growing bigger and bigger. And so that was another reason to bring in the forensic interviews was to show that these allegations weren't actually being bigger and bigger. They were consistent with the in-court testimony, and ultimately it rebutted the conclusion argument because the collusion is... It sounds like you're trying to circumvent the 801 limitation, that the rebuttal has to come... that the statement has to be prior to the charge of fabrication. The concern we have in these cases is the government is always trying to get in this hearsay in these child witness cases to bolster the children because it's usually just the child witness. And maybe there's some forensic evidence, but we've got case after case where the government tries to get in the interviewer to testify or the video or the other people, and there's a potential for abuse there. Yes, Your Honor, and I would say that under normal circumstances, absolutely there is a potential, but in this case the United States took specific steps before trial to provide notice to the defendant twice, that it intended to introduce the videos. Before trial it said, we're not going to unless you either open the door or Thunder Horse applies, and then the defendant does not object and incorporates it as part of his trial strategy. And then he specifically is the first person to mention the forensic interviews to the jury. It puts the United States in a very difficult position as to what to do then. Do we not play the forensic interviews and let the defendant bring in this idea that there's something in there that's not, or do we leave it up to the jury to decide? Because ultimately we're either dealing with plain... The opening statement isn't evidence. Your Honor, it's not evidence, but his first question to NHE was, these interviews were recorded, we could show them to the jury. That implies that there's something there, more than just initial outcries, and it also shows that he wants them in to further his argument. And so that shouldn't be held against the United States, this was a trial strategy by the defendant. Depending on your question, sir, that is all I have. All right, thank you for your argument. Ms. Goetz, would you care to make a rebuttal? Yes, Your Honor, thank you. Thank you. With regard to Mr. O'Connick's argument, I do not believe that the door was opened by defense counsel in this case. He did mention the videos, and he asked NHE, I believe it was, about the videos, but that was more of a situation where, is she going to testify truthfully, reminding her that she made these statements earlier, that basically somebody's watching you. The kids did testify consistently in their CAC interviews. In addition to that, with the admission of the videos, as you see in U.S. v. Cotton, all prior consistent statements were admitted and probably shouldn't have been. When somebody's impeached on the particulars, which I'm arguing there's no impeachment, but if there were, it's not proper to bolster the credibility with the entirety of the out-of-court statements. With regard to Mr. Spotted Bear corroborating information at trial, I don't know that it proves anything by him being like, oh, I remember the situation, but I remember it differently with regard to whether or not a sex act was committed. I don't think that proves anything. In Bercier, again, which I've referenced many times, the debate over what happened was entirely the same between Bercier and the alleged victim in that case, except for whether or not the sex was consensual. So that even agrees that they had sex. I don't think that Bercier's testimony made it more likely that he was guilty than not guilty. With regard to the video, as it relates to concocting allegations, the videos don't show anything with regard to whether or not these girls all conspired against him, and they also show or aren't related to whether or not anything was concocted after these videos. If I may just have a moment, Your Honor. Your Honors. And if we go back to Rule 807 with the residual exception, first of all, that analysis was not conducted by the district court, so we don't know exactly how it would have ruled. But with regard to 807A4, admitting it will best serve the purposes of these rules and the interests of justice. I worry that 807 is going to be an end run by the government in any given case, despite what the rest of the rules state. The purpose of these rules is not to admit prior consistent statements, except for in two instances, and in the interest of justice. I just don't think that piling on was a proper in this case, and we're asking you to remand for a new trial for Mr. Spotted Bear. Thank you. Thank you, Ms. Goetz. The case is submitted. The court will file an opinion in due course. That completes the argument calendar for today, and the court will be in recess until tomorrow morning.